1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11  ROBERT JAMES ANTHONY,                    No.  2:14-cv-01230-MCE-EFB

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14  EXPERIAN INFORMATION
    SOLUTIONS INC., et al.,
15

16              Defendants.

17

18        Through this action, Plaintiff Robert James Anthony ("Plaintiff") seeks damages

19  from Experian Information Solutions Inc. ("Defendant") for wrongfully failing to

20  reasonably investigate Plaintiff's credit disputes and incorrectly reporting his credit

21  information.  Presently before the Court is Defendant's Motion for Summary Judgment,

22  or, in the alternative, Summary Adjudication ("Motion").  Def.'s Mot., ECF No. 41.

23  Plaintiff timely filed an opposition and Defendant timely replied.  Pl.'s Opp., ECF No. 44;

24  Def.'s Reply, ECF No. 55.  For the reasons set forth below, Defendant's Motion is

25  GRANTED in its entirety.[1]

26  ///

27  _____
        [1] Because oral argument would not be of material assistance, the Court ordered this matter
28  submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1

1

2

## BACKGROUND[2]

3    Plaintiff is a 78-year-old retiree who has lived in South Lake Tahoe since 1969.

4    Pl.'s Compl., ECF No. 1, ¶ 9.  Around March 13, 2012, Plaintiff began receiving notices

5    from his account and credit card holders informing him that some of his accounts were

6    closing and his credit limits were being reduced due to poor credit.  Id., ¶ 12.  Plaintiff

7    was confused by the notices indicating his credit rating had dropped and requested a

8    credit report from the Defendant.  Id., ¶ 13.

9    Defendant is a credit reporting agency ("CRA") that creates consumer credit

10   reports from information provided by credit grantors ("furnishers").  DSUF, ¶ 3.[3]

11   Furnishers provide consumer identifying information (date of birth, social security

12   number, name, and address), as well as credit information (account numbers, status,

13   and payment history and balances) to CRAs.  Id., ¶¶ 4, 5.  Defendant evaluates the

14   reliability of furnishers by conducting on-site inspections, reviewing furnishers' stated

15   business purposes, checking applicable licenses, affiliations, advertisements, and web

16   content, and obtaining furnishers' certifications that they will provide only accurate

17   information.  Id. ¶¶ 12-16.  After collecting the data from furnishers, Defendant employs

18   additional accuracy and reliability safeguards (e.g., subjecting all incoming credit data to

19   quality control and compliance procedures, analyzing all incoming data for unusual

20   trends and/or aberrations suggesting reporting errors, and periodically reviewing

21   individual furnisher's data) before providing consumers with copies of their credit reports

22   to give them the opportunity to review their credit information and bring to Defendant's

23   attention any inaccuracies.  Id., ¶¶ 17-21, 23-24.  When consumers find inaccuracies in

24   ///

25   _____

26   [2] The following facts, all of which are undisputed, are taken, at times verbatim, from Defendant's
     Statement of Undisputed Facts, ECF No. 41-2 ("DSUF"), Defendant's Motion, ECF No. 41, Plaintiff's

27   Statement of Undisputed Facts, ECF No. 45 ("PSUF"), and Plaintiff's Complaint, ECF No. 1.

     [3] Some of the furnishers in this case are, for example, Advanta, American Express, Bank of
28   America, and Discovery Financial Services LLC.  See, e.g., ECF No. 43, Ex. A4

1  their reports, or when they believe their reports are incomplete, they may dispute the

2  items in question and Defendant will then conduct a reinvestigation.  Id., ¶ 25.

3          Between April 2012 and April 2014, Defendant received five disputes regarding

4  Plaintiff's report.  Def.'s Mot. at 5-8; DSUF, ¶¶ 69, 75, 86, 92, 102.  Initially, on April 12,

5  2012, someone used Plaintiff's online account with Defendant to dispute eleven

6  accounts, or items, in Plaintiff's credit file.  DSUF, ¶ 69; ECF No. 43, Ex. A1.  According

7  to that dispute, the accounts did not belong to Plaintiff, who also requested to see a

8  signature card.  ECF No. 43, Ex. A1.  Defendant contacted the furnishers associated

9  with those accounts through an Automated Consumer Dispute Verification ("ACDV")

10  process, and based on their responses, deleted one account, updated five accounts

11  (with new information from the furnishers), and verified the remaining five accounts as

12  reported.  DSUF, ¶¶ 72-73.[4]  Defendant sent Plaintiff the results of its investigations on

13  May 17, 2012.  Id., ¶74.

14          Subsequently, on October 15, 2012, Defendant received another letter from

15  Plaintiff.  DSUF, ¶ 75; ECF No. 43, Ex. A4.  The letter again disputed eleven accounts in

16  Defendant's consumer file (ten previously disputed in April 2012 and one new account),

17  indicated that Plaintiff did not go by three reported variations of his name (Rob Anthony,

18  Robert Anthony, or Robert J. Anthony),[5] and advised that Plaintiff had never lived at two

19  reported addresses in Roseville and Antelope, California.  Id.  During its reinvestigation,

20  Defendant discovered that, as to the previously disputed accounts, three had since been

21  removed from Plaintiff's credit file.  DSUF, ¶ 80.  Defendant reinvestigated the new

22  disputed account, deleted it per the furnisher's response, and sent Plaintiff the results of

23  the reinvestigation, which also informed him that because the remaining seven accounts

24  had already been disputed and verified, Defendant would not reinvestigate again.  Id.,

25  ¶¶ 81-85.

26          [4] All further reinvestigations were conducted through the ACDV process as well.

27          [5] Defendant correctly notes that despite his claims Plaintiff nonetheless used one of the disputed
   names, "Robert J. Anthony," in the return address of the envelope and it is also the name written verbatim
28  on Plaintiff's social security card.  Def.'s Mot., at 6;  ECF No. 43, Ex. A4.

On December 15, 2012, Plaintiff sent another dispute to Defendant refuting ten accounts as not belonging to him, stating that Plaintiff had never worked for a "Robert J. Anthony," who was his reported employer, and reiterating that Plaintiff has never lived in Roseville or Antelope.  ECF No. 43, Ex. A8.  Furthermore, this dispute suggested for the first time that Defendant may have mixed Plaintiff's credit history and personal information with his son's, and stated that his son (Robert John Anthony) had lived at the reported addresses in Roseville and Antelope.  Id.  Defendant did not reinvestigate four of the disputed accounts because they were no longer reporting in Plaintiff's credit file.  It did, however, provide the new information about the potential confusion of Plaintiff's information with his son's to the furnishers for the remaining six accounts.  DSUF, ¶¶ 88-89.  Following the furnishers' instructions, Defendant updated two of the accounts, but left all six on Plaintiff's credit file because they had been verified by the furnishers' responses.  Id., ¶ 90.  Defendant again sent Plaintiff the results of the reinvestigation.  Id., ¶ 91.

On April 19, 2013, Defendant received another letter from Plaintiff disputing seven accounts (all seven had previously been disputed and two accounts were no longer in Plaintiff's credit file).  DSUF, ¶ 92.  The letter again reiterated that Plaintiff never lived at the Roseville or Antelope addresses and that Plaintiff had never worked for "Robert J. Anthony."  ECF No. 43, Ex. A11.  It made no mention of Plaintiff's prior theory that his credit history was being mixed with his son's.  Id.  Defendant updated Plaintiff's employment, but since Plaintiff did not provided new information regarding disputes, it did not reinvestigate the remaining five accounts.  DSUF, ¶¶ 95-96.  Plaintiff was sent the results of this reinvestigation on May 6, 2013.  Id.

Finally, in a March 26, 2014 letter, Plaintiff claimed for the first time that he was the victim of identity theft, providing Defendant a copy of a "police report" in support of this contention.  DSUF, ¶102; ECF No. 43, Ex. A14.[6]  This letter included a copy of

---

[6] Plaintiff also contends that Defendant was separately notified that he had been the victim of fraud relying on a draft form notification produced in discovery by a former Defendant.  See ECF No. 65 at 4.  The Court will address this document further in its analysis below.

1   Plaintiff's driver's license and identified six accounts Plaintiff believed were connected to

2   the theft.  Id.  The "police report" was an online-generated "Incident Report" form

3   submitted by Plaintiff's counsel and containing only Plaintiff's name and address and

4   counsel's email.  DSUF, ¶¶ 103-108; ECF No. 43, Ex. A14.  It did not include any other

5   identifying information, such as middle name, date of birth, sex, driver's license number,

6   social security number, residence address, or phone number for follow up.  Id.  Nor did

7   the letter claim anyone had stolen his identity.  Rather, the narrative section of the report

8   simply stated: "There are negative entries on my credit reports . . . I am concerned my

9   personal information was combined with someone else who has bad credit."  ECF

10  No. 43, Ex. A14.

11        In response to this dispute, Defendant mailed three separate letters to Plaintiff on

12  April 5, 2014.  DSUF, ¶ 112; ECF No. 43, Ex. A15.  The first letter informed Plaintiff that

13  a Security Alert was added to his credit file and provided him with information about his

14  rights under the Fair Credit Reporting Act ("FCRA").  Id. ¶ 113.  The second letter

15  acknowledged Defendant's receipt of the identity theft report, but informed Plaintiff that

16  more information was needed.  DSUF, ¶ 104; ECF No. 43, Ex. A15.  The third letter

17  provided detailed specifics about the information needed to validate the report and

18  permanently block credit information.[7]  DSUF, ¶ 115;  ECF No. 43, Ex. A15.  Shortly

19  thereafter, Plaintiff initiated this suit.

20

21                                    **STANDARD**

22

23        The Federal Rules of Civil Procedure provide for summary judgment when "the

24  movant shows that there is no genuine dispute as to any material fact and the movant is

25  _____

26        [7] Plaintiff's complaint also alleges that he wrote a dispute letter in December 2013 responding to
    credit disclosure on November 6, 2013.  Pl.'s Compl., ECF No. 1, ¶¶ 28, 82.  Defendant responded to this
    allegation in its DSUF by stating that it had never received the letter.  DSUF, ¶¶ 98-101.  Plaintiff responds
27  that this allegation was due to an error in the complaint and that he informed the Defendant it would be
    withdrawn.  ECF No. 55-1, ¶ 100.  Although Plaintiff never withdrew this allegation, the Court considers
28  this allegation moot given Plaintiff's response.

1  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

2  Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to

3  dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

4          Rule 56 also allows a court to grant summary judgment on part of a claim or

5  defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may

6  move for summary judgment, identifying each claim or defense—or the part of each

7  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

8  Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a

9  motion for partial summary judgment is the same as that which applies to a motion for

10  summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

11  Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

12  judgment standard to motion for summary adjudication).

13          In a summary judgment motion, the moving party always bears the initial

14  responsibility of informing the court of the basis for the motion and identifying the

15  portions in the record "which it believes demonstrate the absence of a genuine issue of

16  material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial burden, the

17  burden then shifts to the opposing party to establish that a genuine issue as to any

18  material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

19  475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89

20  (1968).

21          In attempting to establish the existence or non-existence of a genuine factual

22  dispute, the party must support its assertion by "citing to particular parts of materials in

23  the record, including depositions, documents, electronically stored information,

24  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

25  not establish the absence or presence of a genuine dispute, or that an adverse party

26  cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The

27  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

28  might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby,

313916587707358b

1  *Inc.*, 477 U.S. 242, 248, 251-52 (1986); <u>Owens v. Local No. 169, Assoc. of W. Pulp and</u>

2  <u>Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

3  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

4  such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>,

5  477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

6  before the evidence is left to the jury of "not whether there is literally no evidence, but

7  whether there is any upon which a jury could properly proceed to find a verdict for the

8  party producing it, upon whom the <u>onus</u> of proof is imposed."  <u>Anderson</u>, 477 U.S. at 251

9  (quoting <u>Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)) (emphasis in original).

10  As the Supreme Court explained, "[w]hen the moving party has carried its burden under

11  Rule [56(a)], its opponent must do more than simply show that there is some

12  metaphysical doubt as to the material facts."  <u>Matsushita</u>, 475 U.S. at 586.  Therefore,

13  "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

14  nonmoving party, there is no 'genuine issue for trial.'"  <u>Id.</u> 87.

15      In resolving a summary judgment motion, the evidence of the opposing party is to

16  be believed, and all reasonable inferences that may be drawn from the facts placed

17  before the court must be drawn in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at

18  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

19  obligation to produce a factual predicate from which the inference may be drawn.

20  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

21  810 F.2d 898 (9th Cir. 1987).

22

23                                                        **ANALYSIS**

24

25      Plaintiff claims Defendant failed to comply with requirements under certain

26  provisions of the FCRA, and the California Consumer Credit Reporting Agencies Act

27  ("CCRAA").[8]  Pl.'s Compl., ¶¶ 61, 111, 155.  Specifically, Plaintiff claims violations under

28  ───────────────────
      [8] Plaintiff initially sought injunctive relief under the Cal. Bus. & Prof. Code § 17200 et. seq.  Pl.'s

1   15 USC §§ 1681c-2, 1681e(b), 1681i, 1681n, and 1681o; Cal. Civ. Code §§ 1785.14(b),

2   1785.16(a), 1785.16(b), 1785.16(d), and 1785.16(k).  Id., ¶¶ 60-92, 110-147. The

3   standards for evaluating Plaintiff's state claims parallel those governing his federal

4   causes of action.  Olson v. Six Rivers Nat'l Bank, 111 Cal. App. 4th 1, 12 (2003).

5   Accordingly, the viability of Plaintiff's CCRAA claims is derivative of the viability of his

6   FCRA claims, and, although the Court analyzes only the latter causes of action here, the

7   result under state law is the same as under the federal provisions.  Defendant is

8   therefore entitled to summary judgment on the complaint in its entirety.

9   **A.    15 U.S.C. § 1681c-2, Blocking Information Based on Identity Theft**

10  Under the FCRA, 15 U.S.C. § 1681c-2:

11  [A] consumer reporting agency shall block the reporting of
    any information in the file of a consumer that the consumer

12  identifies as information that resulted from an alleged identity
    theft, not later than 4 business days after the date of receipt

13  by such agency of--

14  (1) appropriate proof of the identity of the consumer;

15  (2) a copy of an identity theft report;

16  (3) the identification of such information by the consumer;
    and

17

18  (4) a statement by the consumer that the information is not
    information relating to any transaction by the consumer.

19  15 U.S.C. § 1681c-2(a).  CRAs must also notify furnishers of the report and information

20  received from consumers.  Id. § 1681c-2(b).  CRAs may also request additional

21  information or documentation for determining validity of alleged theft within fifteen days

22  of receiving a copy of the report.  12 C.F.R. § 1022.3(i)(1).  It is reasonable for a CRA to

23  request additional information when the "consumer provides a law enforcement report

24  generated by an automated system with a simple allegation that an identity theft

25  ///

26

27  Compl., ¶¶ 154-166.  However, in his opposition to Defendant's Motion, Plaintiff concedes that he is no
    longer pursuing these claims because all of the false or fraudulent information has been removed from his

28  credit file.  Pl.'s Opp'n, ECF No. 44, at 20.  Given Plaintiff's withdrawal, the Court finds Plaintiff's claims for
    injunctive relief moot.

1  occurred to support a request for [credit information] block or cessation of information
2  furnishing."  12 C.F.R. § 1022.3(i)(3)(iii).

3      According to Defendant, it is entitled to summary judgment because it was not
4  required to block any reporting in this case since Plaintiff's "police report" failed to meet
5  the statutory requirements.  In addition, it contends that its request for additional
6  information was reasonable.  Plaintiff disagrees, arguing that based on the information
7  provided in the report and Defendant's prior knowledge that Plaintiff claimed his credit
8  history had been mixed with another consumer's, a jury could find that the report was
9  sufficient to trigger Defendant's duties under §1681c-2.  Pl.'s Opp'n, at 15.  Plaintiff's
10  argument is not well taken.

11      Plaintiff's online submission was wholly insufficient to trigger Defendant's duties to
12  block the reporting of information.  It contained little to no information, did not actually
13  allege any identity theft, and instead again indicated that Plaintiff thought his credit
14  history had been confused with another individual's.  Moreover, it was not signed under
15  the penalty of perjury and was instead submitted by counsel.  Defendant's request for
16  additional information under the circumstances was entirely reasonable, so reasonable
17  in fact, that these circumstances are expressly contemplated in the applicable
18  regulations.  It would have been irresponsible for a CRA to block reporting based solely
19  on the extremely limited information Plaintiff provided.  Indeed, accepting Plaintiff's
20  argument would essentially permit consumers the freedom to unilaterally dictate what
21  information is included in their reports.  Therefore, the Court finds that even considering
22  all facts in the light most favorable to Plaintiff, a reasonable jury could not find that
23  Defendant's actions were unreasonable or that Defendant violated its duties.
24  Consequently, the Court GRANTS Defendant's Motion as it relates to § 1681c-2.

25      **B.      15 U.S.C. § 1681e(b), Accuracy in Preparing Credit Reports**

26      Plaintiff's claim arising under 15 U.S.C. § 1681e(b) fares no better.  Section
27  1681e(b) states that when a CRA prepares a credit report, "it shall follow reasonable
28  procedures to assure maximum possible accuracy."  15 U.C.S. § 1681e(b).  The focus of

1  this section is on the reasonableness of a CRA's procedures in obtaining credit

2  information, rather than on a CRA's reasonableness in reinvestigating credit information.

3  Darrin v. Bank of Am., N.A., No. 2:12-cv-00228, 2014 WL 1922819, at *6 (E.D. Cal.

4  May 14, 2014) (citing Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333

5  (9th Cir. 1995) and Saenz v. Trans Union, LLC, 621 F. Supp. 2d 1074, 1081 (D. Or.

6  2007)).   A CRA does not violate § 1681e(b) even if it reports inaccurate information, so

7  long as it reasonably believed the source to be reputable at the time it received the

8  information.  Id.

9          Defendant contends that it is entitled to summary judgment because its

10  procedures were reasonable in that it utilized rigorous quality control and statutory

11  compliance procedures, and had no reason to doubt the reliability of furnishers providing

12  it with Plaintiff's credit information.  Def.'s Mot., at 15-16.  Plaintiff responds that

13  Defendant did have reason to doubt the furnishers because he brought to Defendant's

14  attention issues with the accuracy of the information furnishers had provided.  Pl.'s

15  Opp'n, at 8-10.  Further, Plaintiff asserts that had the Defendant contacted him, he could

16  have informed Defendant of the reasons for the inaccuracies in the report.  Id.

17  Defendant again has the better argument.

18          From a practical perspective, a consumer's dispute of inaccurate information

19  alone cannot call into question a furnisher's credibility because consumers have an

20  incentive to be deceitful about their credit information.  As such, allowing them to dictate

21  their own credit history would make credit reports less, rather than more, accurate.

22  Furthermore, in this case the only evidence of unreasonableness that Plaintiff even

23  attempts to proffer relates to Defendant's reinvestigation (§ 1681i, discussed below)

24  rather than it's separate duties in obtaining information (§ 1681e(b)).  On this record,

25  there can be no dispute as to the reasonableness of Defendant's latter procedures, and

26  Defendant is entitled to judgment as a matter of law as to Plaintiff's claim under

27  15 U.S.C. § 1681e(b).

28  ///

**C.      15 U.S.C. § 1681i, Reasonableness of Reinvestigation Procedures**

Plaintiff's 15 U.S.C. § 1681i reinvestigation claim nonetheless fares no better.  As is pertinent to this claim, if a consumer disputes the completeness or accuracy of a credit report and the CRA is notified of the dispute, the CRA has a duty to conduct "a reasonable reinvestigation" to determine the accuracy of the credit information and—if appropriate—update the status of the information or delete it.  15 U.S.C. § 1681i(a)(1)(A).  Within five days of receiving the dispute, the CRA must provide a notice of the dispute to the furnisher(s) of the information in question, which notice shall include all relevant information the consumer provided.  The CRA has a duty to review and consider all the relevant information as well.  15 U.S.C. § 1681i(a)(2), (4).  If after the reinvestigation, the CRA finds an item is inaccurate, incomplete, or unverifiable, the CRA must delete or modify the information and notify furnishers of its actions.  15 U.S.C. § 1681i(a)(5).

The CRA must also provide written notice of the results to the consumer within five days of completing the reinvestigation.  15 U.S.C. § 1681i(a)(6).  If the dispute is not resolved at the conclusion of the reinvestigation, the consumer may file a statement regarding the nature of the dispute and the CRA must include it in any subsequent credit reports unless the CRA has reasonable grounds to believe the dispute to be frivolous or irrelevant.  15 U.S.C. § 1681i(b) & (c).

To establish a failure to properly reinvestigate pursuant to the above authorities, Plaintiff must prove that 1) his credit file contained inaccuracies; 2) he notified the defendant of the dispute; 3) his dispute was not frivolous; 4) Defendant failed to respond; and 5) Defendant's failure caused Plaintiff actual damages.  Carvalho v. Equifax Info. Servs., Inc., LLC, 588 F. Supp. 2d 1089, 1095 (N.D. Cal. 2008).  Here, Defendant claims it fulfilled its duty to reinvestigate and further claims that its procedures were reasonable because it contacted furnishers, informed them of the dispute, included all relevant information, requested that the furnishers verify the information, and provided timely notices of results.  Def.'s Mot., at 16-18.  According to Defendant, it reinvestigated all of

1    Plaintiff's disputes, with the exception of previously reinvestigated accounts because it

2    was reasonable to accept the furnisher's previous verifications as accurate.  Id.  Plaintiff

3    challenges Defendant's conclusion, arguing that Defendant's reliance on furnishers'

4    verification through the ACDV process only brings into question the reasonableness its

5    procedures. Pl.'s Opp'n, at 10-12.

6         "The Ninth Circuit has not expressly ruled on whether relying on the ACDV

7    system [without more] is reasonable." Avetisyan v. Equifax Info. Servs. LLC,

8    No. Cv 14-00161-AB, 2015 WL 12656951, at *9 (C.D. Cal. Mar. 25, 2015).  That said, in

9    instances where a CRA is affirmatively on notice that reliability of a furnisher's

10   information is suspect, it is unreasonable to merely rely on the ACDV process without

11   additional investigation.  Darrin, 2014 WL 1922819, at *9 (citing Bradshaw v. BAC Home

12   Loans Serv., LP, 816 F. Supp. 2d 1066 (D. Or. 2011)); see also Avetisyan,

13   2015 WL 12656951, at *9.  Plaintiff claims such a situation presented itself here because

14   Defendant was on notice of the unreliability of the furnishers' information given a fraud

15   alert form that was purportedly sent from one of the furnishers to Defendant around April

16   2012.  Pl.'s Opp'n, at 11.

17        The evidence in the record does not support this conclusion.  First, there is no

18   evidence that such an alert was ever sent or received.  To the contrary, the document

19   Plaintiff relies upon was received in discovery from a third party and is still marked as a

20   draft.  Second, it is unclear when this document was drafted in the first place. Plaintiff

21   claims the document is from 2012, but the document itself indicates it was drafted in

22   April 2014.  Moreover, discovery responses corroborate that it was a 2014 notice as well.

23   Pl.'s Opp'n, Ex. 2; ECF No. 57, Ex. 1, at 6-7.  Given its many flaws, the document is

24   simply insufficient to support the conclusion that Defendant ever received any fraud

25   notice outside of Plaintiff's March 2014 correspondence, to which Defendant reasonably

26   responded.  Since Plaintiff failed to provide evidence that could affirmatively

27   demonstrate Defendant was on notice of fraud before it conducted its reinvestigation, or

28   that there was any reason to believe the furnishers' information was suspect,

1    Defendant's reliance on the ACDV process alone is reasonable under § 1681i as a

2    matter of law.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1156 (9th Cir.

3    2009) (stating that a CRA's "reasonable investigation" consists largely of triggering an

4    investigation by the furnisher because the statute recognizes that furnishers stand in a

5    better position to make a thorough investigation of disputed information).  The court thus

6    GRANTS Defendant's Motion as it relates to § 1681i.[9]

7

8                                        **CONCLUSION**

9

10          For the reasons discussed above, Defendant's Motion for Summary Judgment

11   (ECF No. 41) is GRANTED in its entirety.

12          IT IS SO ORDERED.

13   Dated:  March 30, 2017

14

15                                                      _____
                                                       MORRISON C. ENGLAND, JR.
16                                                     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27          [9] Given the Court's conclusions on Plaintiff's substantive claims, his allegations of willful
     noncompliance, 15 U.S.C. § 1681n, and negligent noncompliance, 15 U.S.C. § 1681o, necessarily fail as
28   well.

                                               13